## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DEBRA MARIE VALDEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-11-CA-0581-XR** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF THE SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

On this date, the Court considered the record in this case.  For the reasons stated below, the decision of the Commissioner of the Social Security Administration denying Plaintiff's Disability Insurance Benefits and Supplemental Security Income is AFFIRMED.

### I. Introduction

Plaintiff, Debra Marie Valdez seeks review and reversal of the administrative denial of her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) by the Administrative Law Judge ("ALJ").  Valdez contends that the ALJ erred in determining that she can perform sedentary work.  Valdez asks the Court to reverse the decision of the Defendant, the Commissioner of the Social Security Administration (SSA), denying her benefits.  In the alternative, Valdez asks the Court to remand for further factual development.

### II. Administrative Proceedings

Plaintiff fully exhausted her administrative remedies prior to filing this action in federal court.  Plaintiff filed for SSI/DIB benefits on September 29, 2008, alleging disability beginning May

5, 2008, the "alleged onset date" ("AOD").  The Commissioner rendered a final administrative decision denying Plaintiff benefits by action of the Appeals Council on April 8, 2011.

### III. Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[1]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[3]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[4]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[5]  Conflicts in the evidence and credibility assessments are for the

---

[1]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[2]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[3]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[4]*Martinez*, 64 F.3d at 173.

[5]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

Commissioner and not for the courts to resolve.[6]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[7]

### 1. Entitlement to Benefits

To be eligible to receive DIB, an individual must: (1) be insured for disability benefits; (2) be below retirement age; (3) meet certain income and resource requirements; (4) have filed an application for benefits; and (5) be under a disability.[8]  To be eligible to receive SSI benefits, an individual must: (1) meet certain income and resource requirements; (2) have filed an application for benefits; and (3) be under a disability.[9]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[10]  A claimant shall be determined to be disabled only if his or her physical or mental impairment or impairments are so severe that he or she is unable to not only do his or her previous work, but cannot, considering his or her age,

---

Commissioner.).

[6]*Martinez*, 64 F.3d at 174.

[7]*Id.*

[8]42 U.S.C. § 423(a)(1).

[9]42 U.S.C. § 1382(a)(1) & (2).

[10]42 U.S.C. § 1382c(a)(3)(A).

education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.[11]

### 2. Evaluation Process and Burden of Proof

Pursuant to regulations set forth by the Commissioner, disability claims are to be evaluated according to a five-step process.[12]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[13]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[14]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[15]  The second step involves determining whether the claimant's impairment is severe.[16]  If it is not severe, the claimant is deemed not disabled.[17]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[18]  If it meets or equals a listed impairment, the claimant is deemed disabled without

---

[11]42 U.S.C. § 1382c(a)(3)(B).

[12]20 C.F.R. §§ 404.1520 and 416.920.

[13]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[14]20 C.F.R. §§ 404.1520 and 416.920.

[15]*Id.*

[16]*Id.*

[17]*Id.*

[18]*Id.*

considering her age, education, or work experience.[19]  If the impairment is not on the list, the Commissioner reviews the claimant's residual functional capacity and, in the fourth step, determines whether she can perform her past work.[20]  If the claimant is still able to do her past work, the claimant is not disabled.[21]  If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability to do other work, given her residual capacities, age, education, and work experience.[22]  If the claimant cannot do other work, she will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[23]  Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is physically able to perform and maintain for a significant period of time, taking into account her exertional and nonexertional limitations.[24]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work.[25]

## B. Findings and Conclusions of the ALJ

In determining whether Plaintiff is disabled, the ALJ used the five-steps established by the

---

[19]*Id.*

[20]*Id.*

[21]*Id.*

[22]*Id.*

[23]*Leggett*, 67 F.3d at 564.

[24]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[25]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

Commissioner's regulations.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.[26]  At step two, the ALJ determined that Plaintiff "has a combination of impairments that is severe: morbid obesity, polyarthralgia (variously diagnosed as fibromyalgia, arthritis, and degenerative joint disease), obstructive sleep apnea, hypothyridism, and depression/anxiety."[27] At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals an impairment in the Listing of Impairments."[28]  At the second part of the third step, the ALJ found Plaintiff "has the residual functional capacity to perform sedentary work, except that she has certain nonexertional limitations."[29]  At step four, the ALJ found that Plaintiff "is able to do past relevant work," which, in Plaintiff's case, includes working as a cashier and billing office clerk.[30]  At step five, the ALJ determined that Plaintiff, born on January 6, 1977, was classified as a young person on the AOD, has a high school education, and is able to communicate in English.[31]  He then found that Plaintiff "is able to adjust to other jobs existing in significant numbers in the national economy."[32]  The ALJ concluded that Plaintiff "has not been disabled at any time since the AOD."[33]

---

[26]SSA Record, p. 12.

[27]*Id.* at 12-16.

[28]*Id.* at 16.

[29]*Id.* at 17-19.

[30]*Id.* at 19.

[31]*Id.* at 19.

[32]*Id.*

[33]*Id.*

**C.  Valdez's Allegations of Error**

Valdez claims that the ALJ erred in determining that she has the residual functional capacity to perform sedentary work.  Valdez maintains that there is no evidence in the record to support the ALJ's determination that she retains the ability to perform sedentary work and that the ALJ failed to afford appropriate weight to the opinion of her treating physician.

Plaintiff relies on a medical form completed on November 18, 2009, by her treating physician, Robert Jakubowski, M.D., which allegedly states that Valdez's ability to stand/walk/sit is limited to "less than 2 hours" and that she would have significant limitations in reaching, handling, or fingering.[34]  Dr. Jakubowski attributes her limitations to her fibromyalgia.[35]  Valdez complains that the ALJ does not mention this evidence in his decision.  She argues that by implicitly rejecting Dr. Jakubowski's opinions, the ALJ failed to apply the appropriate legal standard.

Under the SSA regulations, residual functional capacity is defined as the maximum degree to which an individual retains the capacity for a sustained performance of the physical and mental requirements of the employment activity.[36]  The ALJ has the responsibility to determine the claimant's residual functional capacity based on the relevant evidence, including medical records, physician observations, and the claimant's description of her limitations.[37]  The record will not be considered incomplete if it lacks a medical opinion regarding the claimant's ability to perform past

---

[34]SSA Record, pp. 753-54.  As will be discussed, Dr. Jakubowski's opinion limits sitting to "less than 6 hours," not "less than 2 hours."

[35]*Id.*

[36]20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).

[37]*Ripley v. Charter*, 67 F.3d 552, 557 (5th Cir. 1995).

relevant work; instead, the ALJ can focus on the medical observations and claimant testimony that is present, and can make a determination based on the relative weight attributed to the evidence.[38]

In determining the nature and severity of a claimant's impairments and their effects on her ability to perform past relevant work, the ALJ evaluates the weight of all relevant medical opinions.[39] If the ALJ finds that a treating source's opinion on the nature and severity of the claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ will give it controlling weight.[40]   When the ALJ does not grant a treating source's opinion controlling weight, he must consider the following factors in determining the weight of each source's opinion: (1) whether the source has examined the claimant; (2) whether the source has treated the claimant, including the length and nature of the treatment; (3) whether there are sufficient explanations, such as medical signs and laboratory findings, to support the opinion of the source; (4)  whether the opinion is consistent with the record as a whole; (5) the degree to which the source is a specialist in the field in which the finding was made; and (6) other relevant factors brought to the ALJ's attention.[41]   However, the ALJ is free to reject or give very little weight to a physician's opinion if the overall evidence provided by the record supports a contrary conclusion.[42]

The ALJ properly concluded that Plaintiff retains sufficient residual functional capacity to

---

[38]*Id.*

[39]20 C.F.R. § 404.1527(b).

[40]20 C.F.R. § 404.1527(c)(2).

[41]20 C.F.R. § 404.1527(c).

[42]*Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

perform sedentary work such as her past relevant work as a cashier and billing office clerk.  The ALJ's determinations are derived from the following findings: (1) the overall record reveals that Plaintiff does not have significant functional limitations imposed by her impairments; (2) Dr. Jakubowski's opinion contradicts the record and is not entitled to controlling weight; and (3) Plaintiff's testimony that she is disabled is insufficient to support a finding of disability.  In reviewing the Commissioner's findings, the court must ensure that they are supported by substantial evidence, but the court does not reweigh the evidence in the record or substitute its judgment for the Commissioner's.[43]

The ALJ properly determined that Dr. Jakubowski's opinion regarding Plaintiff's inability to work should not be granted controlling weight, since it is inconsistent with the other substantial evidence in the record.  The ALJ dedicated a portion of his decision to Dr. Jakubowski's opinion, expressly citing his November 18, 2009 opinion.  Tr. 18 (citing Exhibit 24F, Tr. 752).  The ALJ acknowledged that he must review medical source opinions under § 404.1527 and that he must give Dr. Jakubowki's opinion controlling weight if it satisfies the requirements of § 404.1527(d)(2) and SSR 96-2.

The ALJ noted that Dr. Jakubowski concluded that Plaintiff cannot work until her depression, insomnia, and pain improved, but he found this opinion was not entitled to controlling weight because it was not consistent with the record as a whole, including his own treatment records.  The ALJ noted that the results from Dr. Jakubowski's six examinations of Plaintiff do not support this opinion because "his opinion that she cannot work until her pain improves (presumably referring to the pain in her back and extremities), is not supported by *any* of his six clinical examinations of her."

---

[43]*Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

Tr. 18.  He noted that virtually all six examinations were "unremarkable."  The ALJ then pointed out that, in February 2009, Dr. Jakubowski observed no clinical evidence of back or extremity pain; in May 2009, he noted that examination of Plaintiff's spine was unremarkable; in July 2009, he found no clinical evidence of back or extremity pain; in September 2009, he concluded that examination of her back and extremities was completely unremarkable; in October 2009, he noted that examination of her extremities was completely normal and that musculoskeletal examination was normal, aside from a slight tenderness over her right hip.  Lastly, in November 2009, in the examination on the date on which he rendered his opinion, Dr. Jakubowski observed that clinical examination of Plaintiff's extremities was unremarkable and that her neurological examination was unremarkable.  The ALJ also found that the record contained no objective evidence (from any diagnostic test) to corroborate the symptoms that the doctor said precluded Plaintiff from working.

Plaintiff asserts, and the Court acknowledges, that the ALJ did not expressly reference Dr. Jakubowski's opinion that Plaintiff's ability to stand/walk is limited to "less than 2 hours," that her ability to sit is limited to "less than 6 hours," and that she would have significant limitations with reaching, handling or fingering, which limitations were attributed generally to her fibromyalgia.  Tr. 753-754.  However, the Court disagrees that the ALJ "implicitly" rejected Dr. Jakubowski's opinions or failed to apply the appropriate standard under § 404.1527(d).  The ALJ referenced the opinion, his obligations under § 404.1527(d), and found that the opinion was not entitled to controlling weight.  His conclusion that the opinion was not entitled to controlling weight applies to the opinions relied upon by Plaintiff – with regard to limitations on reaching, handling, and fingering, the ALJ noted that examinations of the extremities were all normal or unremarkable.  Further, Plaintiff's brief mischaracterizes the ALJ's opinion as limiting sitting to "less than 2 hours" when in fact it is "less

-10-

than 6 hours."  Plaintiff does not explain how limitations on sitting to "less than 6 hours" and standing/walking to "less than 2 hours," as found by Dr. Jakubowski, would preclude a finding of an RFC to perform sedentary work. The Court finds that the ALJ applied the correct legal standard and that his conclusion is supported by substantial evidence.

Further, the overall record demonstrates that Plaintiff's impairments do not impose significant functional limitations on her ability to perform sedentary work.  In August 2008, David Hirsch, D.O. found that Plaintiff's EMG and nerve conduction studies results were normal and that she showed a full range of motion in all her joints.[44]  In September 2008, David Garza, M.D. concluded that Plaintiff's cranial nerves were intact and that she showed 2+ deep tendon reflexes.[45] In May 2009, Carlo Demandante, M.D. observed that Plaintiff exhibited full motor strength in her upper and lower extremities and showed no evidence of edema.[46]  A bone scan in June 2009 revealed no signs of osteoblastic bone metastatis, and revealed only diffuse polyarthropy.[47]  In August, October, and November 2009, Scott Worrich, M.D. noted that Plaintiff was not in acute distress and had a normal stance.[48]  He further found that she showed a full range of motions in all her extremities and had normal sensory and motor functioning.[49] The overall medical evidence consistently supports the finding that Plaintiff does not exhibit neurological deficits, limitations in her range of motion,

---

[44]SSA record, pp. 229-31.

[45]*Id.* at 542.

[46]*Id.* at 662.

[47]*Id.* at 387.

[48]*Id.* at 675-90.

[49]*Id.*

or muscle atrophy, which would prevent her  from performing sedentary work.   The ALJ properly concluded that the evidence does not suggest that Plaintiff's impairments present functional limitations that would prevent her from maintaining some residual functional capacity. The record includes no objective evidence from diagnostic tests to corroborate the symptoms that Plaintiff alleges and that Dr. Jakubowski claims prevent her from working.

Plaintiff's testimony that she is disabled is insufficient to demonstrate that she is disabled or that she lacks residual functional capacity.  Plaintiff testified that she cannot work because of: (1) constant debilitating pain in her arms, legs, and hips, as the result of arthritis, fibromyalgia, and radiation therapy for cervical cancer; (2) numbness in her hands; and (3) severe depression that exacerbates her pain.  In determining a claimant's disability, the ALJ considers all the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.[50]  Plaintiff testified that she suffered debilitating pain, but she did not seek help from medical professionals other than Dr. Jakubowski, whose examinations revealed that the pain is intermittent, not as intense as she alleges, and is not accompanied by signs of nerve or muscle damage.  Dr. Jakubowski was able to treat Plaintiff's pain with medication.

Plaintiff's complaint of numbness in her hands is further contradicted by several examinations by different doctors (including David Hirsch, D.O.,[51] David Garza, M.D.,[52] Carlo

---

[50]20 C.F.R. § 404.1529(a).

[51]SSA record, pp. 229-31.

[52]*Id.* at 542.

Demandante, M.D.,[53] and Scott Worrich, M.D.[54]), who note that Plaintiff does not exhibit joint, muscle, or nerve problems in the extremities.  Regarding Plaintiff's depression and its effect on her ability to work, the record indicates that she did not seek the help or treatment of mental health professionals.  Therefore, there is no evidence to corroborate Plaintiff's testimony that her depression prevents her from maintaining a residual functional ability to perform sedentary work.  The Court finds that the ALJ did not err in concluding that Plaintiff's testimony regarding her symptoms and their limiting effects is inconsistent with the evidence in the medical record.

### Conclusion

The Court AFFIRMS the decision of the Commissioner of the Social Security Administration denying Plaintiff's request for Disability Insurance Benefits and Supplemental Security Income.  The Clerk is directed to enter judgment accordingly and to close this case.

It is so ORDERED.

SIGNED this 27th day of August, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[53] *Id.* at 662.

[54] *Id.* at 675-90.